**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HERMAN CRUZ,

                                    Plaintiff,

              - v -                                     Civ. No. 9:06-CV-867
                                                              (GTS/RFT)

AMBER LASHWAY, *Physician's Assistant*,

                                    Defendants.

**APPEARANCES:**                         **OF COUNSEL:**

HERMAN CRUZ
Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ANDREW M. CUOMO                     JAMES SEAMAN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for the Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Hermann Cruz brings this civil rights action, pursuant to 42 U.S.C. § 1983,

asserting that Defendant Amber Lashway was deliberately indifferent to his serious medical needs

in violation of his constitutional rights under the Eighth Amendment. Dkt. No. 1, Compl. Plaintiff

further asserts that Lashway retaliated against him for engaging in constitutionally protected

conduct, thereby violating his constitutional rights under the First Amendment. *Id.*

        Specifically, Plaintiff claims that while incarcerated at Clinton Correctional Facility,

Defendant denied Plaintiff medical attention and forged his medical records in order to hide

Plaintiff's suffering and to punish him in retaliation for his prior lawsuit against other employees of Upstate Correctional Facility, and for grievances he filed against Defendant. *Id.* at p. 8, Causes of Action.  Defendant now moves for Summary Judgment pursuant to FED. R. CIV. P. 56 (Dkt. No. 56), which Plaintiff opposes, (Dkt. No. 58).  For the reasons below, it is recommended that Defendant's Motion be **granted** and the Complaint be **dismissed**.

## I.  FACTS

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not, in their entirety, specifically countered nor opposed by Plaintiff.  *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." (emphasis in original)).

Plaintiff was housed in Upstate's Special Housing Unit ("SHU") from around the middle of 2003 until September 16, 2005.  Compl. at ¶ 1.  While at Upstate, Plaintiff received medication because he suffered from, *inter alia*, Degenerative Disc Disease ("DDD") and two broken ribs.  Dkt. 58, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Resp.") at ¶ 12-13.  On August 25, 2005, Plaintiff commenced *Cruz v. Church*, 05-CV-1067 (N.D.N.Y.), against certain employees of Upstate; Defendant was not named in that lawsuit.  Dkt. No. 56, Def.'s Mot. for Summ. J., Def.'s 7.1 Statement at ¶ 7.  On or around September 16, 2005, Plaintiff was transferred to Clinton and placed in that facility's SHU, where he was housed until the commencement of this action.  *Id.* at ¶ 2.

Defendant worked as a Registered Nurse at Upstate from 1999 until approximately September 17, 2005.  *Id.* at ¶ 3.  Around mid-September 2007, Defendant left Upstate for a position

as a certified Family & Community Nurse Practitioner ("FNP") at Clinton.  *Id.* at ¶ 10-11.  As an FNP at Clinton, Defendant typically made daily rotations in SHU on weekdays, during which she would take sick call slips from inmates, write their medical problems in an ambulatory health record ("AHR"), and order prescriptions.  *Id.* at ¶¶ 15, 22-23, & 26.  Defendant wrote and renewed or refilled many prescriptions for Plaintiff in 2005 and 2006.  *Id.* at ¶ 27-41.

At the request of other nursing staff, Defendant discontinued Plaintiff's medications on two occasions: January 12 and June 14, 2006.  *Id.* at ¶ 42.  At Plaintiff's request, Defendant also discontinued Plaintiff's Robaxin medication on March 23, 2006.  *Id.* at ¶ 43.

The Clinton pharmacy informed Defendant several times that many of Plaintiff's medication requests were submitted too early.  *Id.* at ¶ 48.  On January 5, 2006, Defendant put Plaintiff on a 1:1 schedule for medication.  *Id.* at ¶ 49.  A 1:1 schedule meant that Plaintiff would not keep any medication, instead, a medical provider would bring one dose to Plaintiff when it was time for him to receive medication.  *Id.* at ¶ 50.

On January 9, 2006, Plaintiff filed Grievance #CL-52581-06,[1] claiming that Defendant was withholding medication from him as retaliation for prior grievances he had filed.  *Id.* at ¶ 52.  Beginning on January 9, 2006, Plaintiff refused to take any prescription medication; as a consequence and at the request of Nurse Harriman, Defendant discontinued Plaintiff's medications.[2]  *Id.* at ¶ 53.  On January 17, 2006, Defendant spoke with Plaintiff, offering to restart his medication

---

[1] Defendant asserts Plaintiff filed the Grievance on January 8, 2006, however, it is dated January 9, 2006.  Dkt. No. 56, Brousseau Decl., dated May 28, 2008, Ex. B.  Also, it appears that Plaintiff filed a Grievance on December 23, 2005, which was given the same index number, #CL-52581-06, as his January 9th Grievance.  The Court surmises that given the identical subject matter of these Grievances and their relatively close temporal proximity, they were likely consolidated into one single grievance.

[2] Nurse Harriman is not a named Defendant in this action.

on the 1:1 medication schedule, but Plaintiff refused. *Id.* at ¶ 54.  On February 15, 2006, some of

Plaintiff's medications were restarted after Plaintiff saw Nurse Miller. *Id.* at ¶ 55.  On March 15,

2006, Doctor Lee[3] ordered a thirty (30) day supply of Naproxen for Plaintiff with two refills, which

were to last until about June 15, 2006. *Id.* at ¶ 61.  On March 21, 2006, Plaintiff reported to Nurse

Miller that he was "doing okay with the medicine," and so no changes were made to his drug

regimen. *Id.* at ¶ 62.

On May 19, 2006, Plaintiff complained to Nurse Simpson[4] of drainage behind his right ear,

though Simpson reported finding no drainage. *Id.* at ¶ 66.  On May 23, 2006, Plaintiff complained

of the same condition to Defendant, but Defendant also found no drainage or other medical problem.

*Id.* at ¶ 67.  On June 5 and 7, 2006, Plaintiff again complained to Defendant of pain behind his right

ear, but Defendant found no clinical signs of infection. *Id.* at ¶ 70.  On June 9, 2006, Plaintiff filed

Grievance #CL-52519-06, claiming that Defendant ignored his complaints about the pain behind his

right ear in retaliation for prior complaints Plaintiff filed against her. *Id.* at ¶ 72.

Plaintiff commenced this lawsuit on July 17, 2006.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of

law."  The moving party bears the burden to demonstrate through "'pleadings, depositions, answers

to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no

---

[3] Dr. Lee is not a named Defendant in this action.

[4] Nurse Simpson is not a named Defendant in this action.

genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . .  interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B.  Eighth Amendment Claim

Plaintiff alleges that Defendant Amber Lashway violated his Eighth Amendment rights by denying him medical attention and forging his medical records in order to hide his suffering.  Compl. at ¶¶ 8-11, 16, 19, 22, & p. 8, Causes of Action.  To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).  The first prong is an objective standard and considers whether the medical condition is sufficiently serious.  The Second

Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . .  but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In the case at bar, Plaintiff states that prior to arriving at Clinton he suffered from DDD and two broken ribs, both of which caused him substantial pain.  Pl.'s Resp. at ¶ 12-13; Dkt. No. 58, Pl.'s

Second Decl.,[5] dated June 5, 2008, at ¶ 10; Compl. at ¶ 7.  Plaintiff also alleges he suffered pain in his right ear stemming from a previous surgery, which apparently involved the removal of a benign tumor.  Pl.'s Second Decl. at ¶ 11; Dkt. No. 56, Amber Lashway Decl., dated May 28, 2008, at ¶ 48.

Even assuming, *arguendo*, that such conditions constituted serious medical needs under the Eighth Amendment, Plaintiff has failed to demonstrate that Defendant was deliberately indifferent to those needs.  Plaintiff claims Lashway was deliberately indifferent because she: (1) placed Plaintiff on a 1:1 medication schedule, Compl. at ¶ 9; (2) falsely reported on June 14, 2006, that Plaintiff was receiving Advil when he was not receiving such medication, Compl. at ¶ 16; (3) prevented Plaintiff from seeing a doctor by falsely reporting that she examined him on June 12, 2006, Compl. at ¶ 18; (4) delayed Plaintiff's surgery by falsely stating that he refused to sign the form for surgery, Dkt. No. 56, Pl.'s First Decl., dated July 8, 2006, at ¶ 4; (5) cancelled Plaintiff's physical therapy, Pl.'s First Decl. at ¶ 8; and (6) didn't turn in his prescription refills, thereby depriving him of medication, Compl. at ¶¶ 8, 10-11, 15, & 19.

### 1. *Medication Schedule*

Plaintiff claims that Defendant put him on a 1:1 medication schedule in deliberate indifference to his serious medical needs.  As previously explained, such a schedule does not mean that his medication was denied, only that he was not permitted to keep the medication in his cell for future use.  Therefore, that claim fails to allege deliberate indifference and should be **dismissed**.

### 2. *False Reports*

---

[5] Plaintiff filed two Declarations.  The first is attached to his Complaint and the second is attached to his Response in Opposition to the Defendant's Motion for Summary Judgment.  We will refer to the former as "Pl.'s First Decl.," and the latter as "Pl.'s Second Decl."

Plaintiff's claim that Defendant falsely reported that he was provided Advil does not on its own state a valid claim under § 1983 and should be **dismissed**.[6]  *See, e.g., Benitez v. Locastro*, 2008 WL 4767439, at *11 (N.D.N.Y. Oct. 29, 2008) (allegation that defendants falsified plaintiff's medical records did not state a valid § 1983 claim) (citation omitted).  Plaintiff's claim that Defendant falsely reported that he refused to sign the form for surgery also should also be dismissed to the extent it is raised as a separate cause of action.  *See id.*  To the extent Plaintiff alleges that Defendant's falsification delayed his surgery, he does not allege that he suffered any injury as a consequence of said delay, and therefore, has failed to state a valid claim.

Plaintiff claims that Defendant falsely alleged to have examined him on June 12, 2006, thereby preventing him from seeing a doctor.  However, Plaintiff again has failed to allege any consequential injury stemming from the alleged denial of a consultation with a doctor.  Furthermore, Plaintiff does not dispute Defendant's sworn statement that on June 22, 2006, he refused to leave his cell for a more thorough medical evaluation with Lashway.  Lashway Decl. at ¶ 62 & Ex. C, Pl.'S AHR, entry dated June 22, 2006.  Therefore it is recommended that this claim be **dismissed** as well.

### 3. *Physical Therapy*

Plaintiff claims Defendant improperly cancelled his physical therapy.  The record shows that Nurse Miller scheduled Plaintiff for a medical consultation for his chronic lower back pain and DDD, after which physical therapy was recommended for Plaintiff.  Lashway Decl., Ex. E, Consultation Req., dated Feb. 15, 2006 & Consultation Rep., dated Mar. 16, 2006.  Plaintiff remained in physical therapy from mid-March through June 2006.  *Id*., Consultation Rep., dated Apr.

---

[6] We consider below Plaintiff's claim that he was denied medication during June 2006.

10, 13, 18, 25, 27, May 2, 11, 19, 23, & June 1, 2006.  The physical therapist treating Plaintiff noted on June 1, 2006, that Plaintiff had a full range of motion in his back without pain.  *Id.*, Consultation Rep. dated June 1, 2006.  In addition, Plaintiff was provided Flexeril, a muscle relaxant, in the Spring of 2006.  Thus, Plaintiff was provided both medication and physical therapy for his back, and there is no evidence that Defendant improperly cancelled his physical therapy.  Therefore, this claim of deliberate indifference against Lashway should be **dismissed**.

4.  *Denial of Medication*

Plaintiff's overarching claim is that from September 2005 through July 2006, Defendant deliberately denied him medication by refusing to turn in his prescription requests, and that she prevented him from seeing a doctor.  Pl.'s First Decl. at ¶¶ 5 & 8-9.  Inmates who seek medical attention are required to fill out sick-call slips containing a brief description of their problem or concern.  Lashway Decl. at ¶ 26.  Defendant made daily rounds through SHU around 7:00 a.m. to collect sick-call slips and to address issues that could be handled on the spot.  *Id*.

Plaintiff mentions the following specific periods from September 2005 through July 2006 during which Lashway allegedly denied him medication by failing to turn in sick-call slips: January 1-31, June 6-14, and July 3-6, 2006.  Compl. at ¶¶ 8-13, 15-16, & 19.  We consider these claims *seriatim*.

Regarding Plaintiff's claims concerning January 2006, the record shows that Plaintiff filed Grievance #CL-52581-06 on January 9, 2006, in which he claimed that Lashway did not provide him enough pills to meet his ordered prescription of Cetylpyridinum and Benzocaine.  Dkt. No.56, Tara Brousseau Decl., dated May 28, 2008, Ex. B, Grievance dated Jan. 9, 2006.  The Superintendent denied said Grievance, stating that Plaintiff's "medications were all ordered to be

Nurse Administered on 1/5/06 due to the belief that [he] was abusing his medication." *Id.*, Sup't Decision, dated Jan. 9, 2006.  On January 12th, Nurse Harriman noted in Plaintiff's AHR that he had refused medication "for the last three days;" consequently, Harriman requested that Plaintiff's medication be discontinued.  Lashway Decl., Ex. C, Pl.'s AHR, entry dated Jan. 12, 2006. Defendant asserts that she discontinued Plaintiff's medication as per Harriman's request, and that his medication was not restarted until February 15, 2006.  Lashway Decl. at ¶ 46.  Beyond his conclusory claim that Defendant falsified his medical records, Plaintiff does not deny that he refused the medication, nor that his medication was discontinued as a consequence.

As per Plaintiff's claim that he was denied medication from June 6-14, 2006, the record shows that Plaintiff submitted Grievance #CL-53519-OC on June 9, 2006, in which he complained of extreme pain on the right side of his face near his ear, alleged that Lashway denied him medical attention, and requested to see a doctor.  *Id.*, Ex. C, Grievance dated June 9, 2006.  In his appeal of the Inmate Grievance Resolution Committee's (IGRC) response to that Grievance, Plaintiff stated that he was in fact taking ibuprofen for his ear, but that it was not helping, and asked "why the hard time to see the MD[?]"  *Id.*, Pl.'s Resp. to IGRC, dated June 16, 2006.  The Superintendent denied Plaintiff's appeal, stating that Lashway "ordered Naprosyn pain medication to help the discomfort . . . [and] documented that there was no signs of swelling or infection noted.  On 6/14/06, the grievant refused to take the Naprosyn."[7]  *Id.*, Sup't Decision dated June 15, 2006.  In his appeal of that decision, Plaintiff stated that he was not provided Advil, but rather, Ibuprofen, which upset his stomach.  *Id.*, at Pl.'s Appeal Statement dated June 26, 2006.  Thus, by Plaintiff's own admission, he was provided Ibuprofen for his ear pain during this period.

---

[7] Upon information and belief, "Naprosyn" and "Naproxen" are two different names for the same drug used to treat pain and inflammation.  Information available at www.drugs.com/naprosyn.

In response to Plaintiff's allegations concerning the first days of July 2006, Defendant states that on July 3rd, she was not at work and on July 4th, she was off for the holiday.  Def.'s Mem. of Law at p. 9. Plaintiff does not challenge those assertions, and moreover, Plaintiff's AHR entry for July 3rd was signed by Nurse Harriman, not Defendant, and there is no entry for July 4th.  Pl.'s AHR, entries dated July 3 & 4, 2006.  The record shows that on July 5th and 6th Defendant ordered Plaintiff Tylenol in response to Plaintiff's request.  *Id.*, entries dated July 5 & 6, 2006.  Therefore, there is no basis for Plaintiff's claims related to those dates.

Plaintiff's general claim that Defendant did not provide him medication for his pain is contradicted by the record.  It is undisputed that Defendant provided Plaintiff Naproxen, a pain killer and anti-inflammation drug, on March 23, April 10, and June 12, 2006; Advil on June 15 and 21, 2006; and Tylenol on July 5, 2006.  Also, on March 15, 2006, Dr. Lee ordered Plaintiff a thirty (30) day supply of Naproxen, with two refills, enough to last until June 15, 2006.  Lashway Decl., Pl.'s AHR, entry dated Mar. 15, 2006.  On March 21, 2006, Nurse Miller noted that Plaintiff stated he was "doing okay [with] the medicine."  *Id.*, entry dated Mar. 21, 2006.  Finally, in a letter to Lashway dated May 19, 2006, Plaintiff offered his "sincere apology" for filing "numerous complaints questioning [Lashway's] integrity and professionalism," and affirming that Lashway had been "helping me in every possible way a Nurse/PA can."  Lashway Decl., Ex. F., Lt. dated May 19, 2006.  Thus, the record shows that Plaintiff was provided pain medication on a regular basis.

With respect to Plaintiff's broad claim that he was denied medication from September 2005 through July 2006, the record shows that Plaintiff filled out many sick-call slips requesting medication throughout 2006.  A review of those slips reveals that on many occasions Plaintiff asked to be seen by "P.A. Lashway," and sought various types of medication and refills for medications

previously provided, including: anti-biotic ointment for a rash on his face on February 23rd, March 9th, and April 3rd; "Bacitracin Zinc Ointment" on March 15th, 17th, 20th and 28th; "Methocarbaxul RX #375642" and "Docusate Sod RX # 373814" on January 3rd; "throat Lozenges" on February 27th, April 10th and 12th; ointment on April 5th, 18th, 20th and May 18th; "Colace" on April 24th; and cream for his ear on February 1st and 3rd. Dkt. No. 58, Exs., Med. Servs. Reqs. from 2006. On July 5th, 6th, and 17th, Plaintiff requested pain medication for his lower back and ear, and also requested to see a doctor. *Id.*, Med. Servs. Req., dated July 5, 7, & 17, 2006.

Defendant references her own notes in Plaintiff's AHR, which reflect that she wrote, renewed or refilled many prescriptions for Plaintiff in 2005 and 2006, including: 1) Benadryl on 10/05/05, 10/21/05, 10/25/05, 10/31/05, 11/10/05, 11/15/05, and 11/21/05; 2) Naproxen on 10/7/05, 3/23/06, 4/10/06, and 6/12/06; 3) Loratidine on 10/7/05, 10/24/05, 10/25/05, 12/6/05, 12/12/05, 12/19/05, 1/5/06, and 5/17/06; 4) Indocin on 11/1/05, 11/7/05, 11/15/05, 11/18/05, 11/23/05, and 1/5/06; 5) Robaxin on 11/1/05, 11/12/05, 11/23/05, 11/25/05, 1/3/06, and 1/5/06; 6) Colace on 12/12/05, 12/29/05, 1/3/06, 1/5/06, 3/23/06, and 4/21/06; 7) Flexeril on 3/23/06 and 5/26/06; 8) Sepa Smooth Lozenges on 12/8/05, 12/14/05, 12/19/05, 12/20/05, 12/22/05, 12/27/05, 1/3/05, and 1/5/06; 9) Bacitracin ointment on 2/23/06, 3/9/06, 3/15/06, 3/28/06, 4/3/06, 4/5/06, 4/20/06, 5/18/06, and 6/1/06; 10) Hydrocortizone cream on 2/1/06, 2/9/06, 3/9/06, and 4/18/06; 11) laxatives on 10/18/05 and 10/24/05; 12) Tylenol on 7/5/06; and 13) Advil on 6/15/06 and 6/21/06. Lashway Decl., Ex. C, Pl.'s AHR & Ex. D, Def.'s Summ. of Pl.'s AHR. Beyond his allegation that Defendant falsified his medical records, Plaintiff does not deny that Defendant filled out the aforementioned prescriptions on his behalf or that he received these medications, and furthermore, Plaintiff concedes that Defendant "did provide some meds" to him. Pl.'s Resp. at ¶ 24.

*-13-*

Thus, far from displaying a deliberate indifference to Plaintiff's medical needs, Defendant provided Plaintiff with numerous forms of medication of many occasions.  Therefore, it is recommended that Plaintiff's medical indifference claims be **dismissed**.

### C.  Retaliation Claim

Plaintiff claims that Lashway's alleged acts of deliberate indifference were done in retaliation for: (1) his federal action against other persons in *Cruz v. Church*, 9:05-CV-1067, (N.D.N.Y.), which he filed on August 25, 2005; (2) Grievance #CL-52581-06, filed on January 9, 2006; and (3) Grievance #CL-53519-06, filed on June 15, 2006.  Compl. at p. 8, Second Cause of Action.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted).  Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. August 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine*

-15-

*Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).  The Second Circuit

has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access

. . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances

against state officers.'"  *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d

188, 191 (2d Cir. 1976)) (emphasis and alterations in original).  Therefore, Plaintiff's filing of

grievances and a civil action in federal court is protected conduct.

Plaintiff claims that the adverse actions taken against him were the alleged deprivations of

medical care committed by Lashway.  We have already found these deprivation claims to be without

merit under the Eighth Amendment standard, and although a different standard applies under the

First Amendment, our conclusions hold true under both.  Given the abundance of evidence on the

record to the contrary and the absence of evidence and specific allegations in support of Plaintiff's

claim, we find that Plaintiff has failed to establish that Lashway took adverse actions against him

that would deter a similarly situated individual of ordinary firmness from exercising his

constitutional rights.  Therefore, it is recommended that Summary Judgment be **granted** on this

claim.  *See, e.g., Linares v. Kudlack*, 2007 WL 4287700, at *6 (N.D.N.Y. Dec. 4, 2007) (finding

summary judgment appropriate when plaintiff could not establish that defendant nurses took adverse

actions against him).

### D.  Plaintiff's Other Claims

Plaintiff also makes the following allegations: (1) Defendant "refused to let Plaintiff read the

form one signs before surgery," Compl. at ¶ 4; (2) Defendant had other staff members harass

Plaintiff, Compl. at ¶ 14; (3) Defendant threatened Plaintiff, Pl.'s First Decl. at ¶¶ 6 & 11; and (4)

Other non-Defendants retaliated against him, Compl. at ¶ 24.  Plaintiff's claims against persons not

named as Defendants will not be considered by the Court. Plaintiff's claims of harassment and threats fail to state a claim under § 1983. *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996). Finally, Plaintiff does not state that Lashway's alleged refusal to let him read a surgery form injured him in any way, and in fact, Plaintiff states that he benefitted from two surgeries that were performed at outside hospitals while he was at Upstate. Compl. at ¶ 3. Therefore, it is recommended that these claims be **dismissed**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendant's Motion for Summary Judgment (Dkt. No. 56) be **granted** and the Complaint (Dkt. No. 1) be **dismissed** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 13, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-17-*